WILLIAM ANDERSON and Others, as Liquidators of the City of Glasgow Bank, Respondents, v. JOHN HADDON, Appellant.

*Foreign judgment — when a decree recovered in foreign liquidation proceedings cannot be enforced here against a resident of this State — what must be shown to sustain an action upon a foreign judgment.*

This action was brought by the liquidators of a Scotch bank against the defendant, a resident of this State, to recover the amount of a call, upon the shares of stock of the said bank which were owned by him, imposed by a judgment or decree of the Court of Sessions or Lord Ordinary of Scotland. The call was imposed under the provisions of an English statute providing for the incorporation, regulation and winding up of trading corporations. It authorized the Court of Sessions in Scotland during session, and the Lord Ordinary on

the bills during vacation, on production by the liquidators of such a company of a list, certified by them, of the names of the contributories liable in payment of any calls which they may wish to enforce, and of the amount due and the date thereof, to pronounce forthwith a decree against such contributories for payment of the sums so certified to be due by each of them respectively, with interest from the said date till payment, in the same way and to the same effect as if they had severally consented to registration for execution, on a charge of six days, of a legal obligation to pay such calls and interest. At the time the decree was made the defendant was, and ever since has been, a resident of this State.

*Held,* that inasmuch as the mode provided by the act of Great Britain for ascertaining the liability of the defendant was summary in its character, in derogation of the common law and in the nature of proceedings in bankruptcy, it had no extra territorial force either by virtue of its own inherent elements or of any provision contained in the act itself creating a personal responsibility which could be enforced in the manner adopted in this action.

That this action could not be maintained upon the said decree.

*It seems,* that the judgment of a foreign country is not conclusive upon the courts of this State, even although the party charged appeared, unless upon a proper examination it is established that the cause of action is one recognized by the common law, and that the judgment sought to be enforced was recovered in an action in which a trial was had in accordance with the rules of the common law, which impose the obligation to produce witnesses to establish the claim and secure the right of the defendant to cross-examination, and indeed all the incidents which govern the investigation of the validity of claims according to the rules mentioned. (Per BRADY, J.)

APPEAL from an interlocutory judgment sustaining a demurrer to the second, third, fourth and fifth defenses contained in the answer.

*Edward Patterson,* for the appellant.

*Shearman & Sterling,* for the respondents.

BRADY, J.:

This action is brought by the liquidators of the City of Glasgow Bank, a foreign corporation created by the laws of Great Britain, against one of the stockholders of the bank to enforce his individual liability upon the stock he owned.

The complaint contains all the necessary averments to show the incorporation of the company, its insolvency, the appointment of the liquidators, and the judgment or decree of the Court of Sessions or the Lord Ordinary against all the stockholders or contributories for the sums which they were called upon to pay upon the amount

of stock which they owned, and adjudging that a judgment or decree was pronounced in that court against the defendant for payment to the plaintiffs of a call of £2,250 sterling for every one hundred pounds of stock, amounting to £22,500 sterling with interest at five per cent, the defendant being a stockholder to the amount of £1,000 of the stock of the company; and claiming a balance of $106,584.88 in gold coin.

The first defense consisted of a general denial of the greater part of the complaint. The second defense alleged that this court has no jurisdiction of this action because the defendant has been since December 17, 1878, a resident of this State, and that, by the bank charter, calls on the shareholders are to be collected in no other way than by process issuing out of the Court of Sessions in Scotland. The third defense alleged that the plaintiffs had no capacity to sue in this State in consequence of the residence of the defendant here since 17th December, 1878, and that the plaintiffs were officers appointed by a foreign tribunal for the purpose of administering a bankruptcy law of Great Britain, and were trustees in bankruptcy only. The fourth defense alleged that no notice was given to the defendant of the settlement of the list of contributories or of the application for decree; that he was not served with process and did not appear in the proceedings. And the fifth defense alleged as a counterclaim that the plaintiffs, as liquidators, have sufficient assets of the bank to pay all its debts and all expenses of liquidation, and demands that the plaintiffs account to the defendant for his share of the surplus of such assets.

It appears from the allegations of the complaint that by section 121 of the Companies Act of 1862, entitled " An act for the incorporation, regulation and winding up of trading corporations and other associations," enacted by the queen and parliament of the Kingdom of Great Britain and Ireland on the 7th of August, 1862, " it was declared that where an order, interlocutor or decree has been made in Scotland for winding up a company by the court it shall be competent to the said Court of Session in Scotland during session, and to the Lord Ordinary on the bills during vacation, on production by the liquidators of a list, certified by them, of the names of the contributories liable in payment of any calls which they may wish to enforce, and of the amount due by each contribu-

tory respectively, and of the date when the same became due, to pronounce forthwith a decree against such contributories for payment of the sums so certified to be due by each of them respectively, with interest from the said date till payment at the rate of five pounds per centum per annum, in the same way and to the same effect as if they had severally consented to registration for execution, on a charge of six days, of a legal obligation to pay such calls and interest. And such decree may be extracted immediately, and no suspension thereof shall be competent, except on caution or consignation, unless with special leave of the Court or Lord Ordinary. It was under this provision that the judgment was obtained against the defendant in the court mentioned in Scotland, which forms the basis of this action.

The plaintiffs interposed a demurrer to the second, third, fourth and fifth defenses upon the ground that each of them was insufficient in law on the face thereof; and the learned justice at the Special Term sustained the demurrers and chiefly upon the ground that the decree of the Court of Sessions possessed all the attributes of a judgment, and it therefore might be the foundation of a suit in the courts of other States. It appears to have been a controlling view with the learned justice, that the defendant having voluntarily become a member of a foreign corporation was bound by the law which created and governed it; and inasmuch as the act of incorporation provided the manner for determining and enforcing the liability of stockholders therein in a special mode, by becoming a stockholder he assented to the proceedings, under its provisions, for determining his liability — in other words, that the defendant had voluntarily subjected himself to the law under which the corporation was organized.

The attention of the learned justice had been called upon the argument to a kindred objection which was considered by him in the case of *Shepard* v. *Wright* (59 How., 512), and in which it was held that the judgment of the court of a sister State had no binding effect in this State, unless the court had jurisdiction of the subject-matter and of the person of the party sought to be affected thereby, and further, that as the defendant was served in that case with a copy of the bill of complaint, in an action in the Dominion of Canada, in this State where the defendant resided, the court

there had no jurisdiction of the person of the defendant; and this was founded upon the plain proposition stated, that no sovereignty could extend its powers beyond its own territorial limits to subject either person or property to its judicial decisions. This result was predicated of the cases cited in *Shepard* v. *Wright (supra)*, confirmatory of the proposition that in order to acquire jurisdiction of the person, it was necessary the defendant should be served with process or voluntarily appear in the action, and that such service could only be made within the territorial jurisdiction of the court.

The learned justice, while recognizing the principles enunciated in the case mentioned, thought they had no application for the reason already suggested, namely, that the defendant by becoming a stockholder consented to the summary proceedings by which his liability should be ascertained and determined. We understand the views of the learned justice stated in that case to be sustained by the adjudication in *Lowry* v. *Inman* (46 N. Y., 119).

From an examination of the provisions of the act under which the defendant was decreed to be responsible for the sum, to recover which this action was brought, it is quite apparent that a residence within the territory of Great Britain was contemplated, and that there should exist, therefore, a jurisdiction of the subject-matter and of the person as well. The mode provided for ascertaining and determining the extent of the liability was quite summary and in derogation of the common law. Indeed it may be said the act in that respect is penal. The defendant was not entitled to notice, and had not his day in court, as wisely provided by the rules of the common law, which may not be departed from without tending to work great injustice.

It is thought, without going into any more extended examination of the question involved, that the cases of *Shepard* v. *Wright* and *Lowry* v. *Inman (supra)*, already referred to, declare the doctrine by which this case should be governed, namely, that inasmuch as the mode provided by the act of Great Britain of ascertaining the liability of the defendant is summary, in derogation of the common law and in the nature of bankruptcy proceedings, it has no extra territorial force either by virtue of its own inherent elements or any provision contained in the act itself creating a personal responsibility which could be enforced in the manner adopted in this action.

It is proper to observe here that comity does not require us to adopt adjudications of a court in a foreign country which proceeds in a manner unknown to our laws. Many countries of the world have tribunals peculiar to themselves and do not recognize our judgments as conclusive or binding upon them. It behooves us, therefore, when a foreign judgment is presented as the basis of a cause of action, to inquire as to the mode of procedure adopted in order to ascertain whether the judgment was pronounced after a trial had according to the rules of the common law, and indeed whether the cause of action was one which could be enforced here; and therefore it may be whether the judgment would be rendered here in a kindred case. When the rules of the common law with regard to the right of trial in all respects have either been violated or disregarded before a tribunal whose decree is sought to be enforced here, even the appearance of the party should not be regarded as conclusive of his rights or indeed affecting them at all injuriously. The spirit of this suggestion is found in the case of *De Brimont* v. *Penniman* (10 Blatchf. Circuit Ct. R., 436), Judge WOODRUFF writing the opinion, in which it was held that notwithstanding the decree of the Civil Tribunal of Paris, in which the defendant not only appeared but defended, and afterwards appealed to the Imperial Court of Paris, the judgment pronounced against him could not be enforced because it was given for a cause of action founded upon the *Code Civile* of France, and proceeded upon the declaration of an obligation not in conformity with our laws and not known to the common law. Judge WOODRUFF in the course of his opinion said: "The principle upon which foreign judgments receive any recognition in our courts is one of comity. It does not require but rather forbids it, when such a recognition works a direct violation of the policy of our laws and does violence to what we deem the rights of our own citizens."

The judgment of a foreign country as already intimated is, therefore, not conclusive upon us, even although the party charged appeared, unless upon a proper examination it is established that the cause of action is one recognized by the common law and the judgment sought to be enforced is one in which a trial was had in accordance with the rules of the common law which impose the obligation to produce witnesses to establish the claim and secure

the right of the defendant to cross-examination, and indeed all the incidents which govern the investigation of the validity, of the claim according to the rules mentioned. If there be an omission in any one of these elements, the violation of the policy of our laws suggested by Judge Woodruff is accomplished and, therefore, violence done to the rights of our citizens.

It seems to be just, therefore, to hold firmly and squarely that when any claim is sought to be enforced in this State by virtue of a proceeding in any other state or country, which has not been investigated or determined according to the rules of the common law, which as already suggested require notice and all the rights of trial, it should not be enforced either as a matter of courtesy or otherwise. The application of such a doctrine to the defendant's case will relieve him of responsibility under the decree set up, inasmuch as it does not appear that at the time the proceedings were confirmed, by which his liability was sought to be established, he was a resident of Great Britain. On the contrary, it appears that he was a resident of this country.

For these reasons it is thought the judgment appealed from should be reversed and demurrers overruled, with costs to the appellant to abide event.

Davis, P. J., and Daniels, J., concurred.

Judgment reversed and demurrers overruled, costs to appellant to abide event.